Please be seated. Case number 3-15-08-77. People of the State of Illinois. Appellee by Justin Nicolosi v. Jonathan Lindsey. Appellee by Editha Rosario Moore. Ms. Rosario Moore. Good afternoon, Your Honors. My name is Editha Rosario Moore, representing Defendant Appellant Jonathan Lindsey on behalf of the Office of the State Appellate Defender. Defendants raised three issues on appeal, and I'll be discussing the first issue, that the warrant here lacks probable cause. Mr. Lindsey was convicted of unlawful possession with intent to deliver heroin within 1,000 feet of a school and sentenced to seven years in prison. His conviction was based on evidence seized from the search of his hotel room pursuant to a search warrant based on the warrantless dog sniff of his hotel room door. Now, it's settled law that people have the same reasonable expectation of privacy inside their hotel room that they do in a home or in an apartment. And it's also settled that a dog sniff of the front door of a residence is a search under the Fourth Amendment. Here, we have a targeted dog sniff of a hotel room door. Now, this is borne out in the warrant. The warrant states information amounting to a hunch that the defendant was allegedly selling drugs from a hotel. The warrant then states that police conducted a dog sniff of Room 130, which they believed was the defendant's room, with a positive alert. Now, at the motions hearing, Officer Pena, who had conducted the dog sniff with his canine partner, testified that the dog sniffed the hall and then alerted to Room 130. But on cross-examination, Officer Pena admits that the dog enters the alcove, which goes to entrances for both Rooms 130 and 131, and then alerts to the odor of narcotics. Officer Pena then directs the dog to show him, to narrow it down, to see where it's coming from. The dog then sniffed defendant's hotel room door and alerts. This was a targeted sniff of the defendant's hotel room door. And it was a search that violated defendant's reasonable expectation of privacy under the Fourth Amendment. Now, Jardines, Burns, and Bonilla dealt with dog sniffs of residences. Jardines dealt with the dog sniff of a home, and Burns and Bonilla with apartments. Those cases talk about a sense of a privilege. Right. Do you have a privilege to go to your hotel room door? No. They use a property rights approach. But it doesn't foreclose a reasonable expectation of privacy approach when you're dealing with residences. That's the approach that was used in Kylo. You're dealing with a home, a residence there. In Kylo, the Supreme Court held that you had a Fourth Amendment search when the government used a sense-enhancing tool. In that case, it was thermal imaging technology. It's generally not available to the public. And they were able to see inside defendant's house to see heat, which defendant used to grow narcotics. The court held that that was a search. The court did not hold that it was a search based on curtilage, but it was a search based on defendant's minimal expectation of privacy in his residence. That analysis applies here. Well, but the thermal imaging they talked about would show what time the lady in the house had taken a bath and stuff like that. So you're, in a sense, looking inside. So do you think thermal imaging, as the U.S. Supreme Court has described it, is the same thing as a dog sniff? Well, certainly the concurrence in Jardines, which dealt with the dog sniff of the door of a home, just as Kagan opined that it was the same thing, that you're using a sense-enhancing tool to look at the intimate activities of the home. That was a key idea in Kylo. The court rejected the idea that you would parse out which activities were the intimate activities. All activities inside a home are intimate activities. When the government is using a tool not available to the general public to see inside, and in this case, when the government directed the dog sniff of the hotel room door, the dog was sniffing the odor inside the hotel room door. It went beyond a sniff of the hall and specifically to the defendant's hotel room where he had a reasonable expectation of privacy. So in other words, because the dog sniff implicated at least another room, because we have an alcove here, the police would not have known that the odor was specifically coming from room 130 without directing the dog to sniff and to show the officer and narrow it down. The police needed individualized probable cause to do that because it was a search under the Fourth Amendment. Now this court's decision in Bonilla, as I stated, dealt with a dog sniff of an apartment. Bonilla relied on a curtilage property rights approach, but in this court's reasoning, Whitaker was cited. Whitaker's a Seventh Circuit case which applied the Cairo approach to the dog sniff of an apartment. In that decision, the court reasoned that just because the defendant doesn't have an absolute right to exclude people from the hall didn't mean the defendant didn't have a reasonable expectation of privacy that the police would not snoop in his hall, into his apartment, using a sense-enhancing tool. And that's exactly what we have here. You have beyond a sniff of the hall. You have a targeted sniff of the door. Defendant had this reasonable expectation that the police would not snoop in the hall and then into his hotel room using the sense-enhancing tool. That was a warrantless dog sniff that was an impermissible search and defendant's motion should have been granted. As such, the impermissible search also can't be saved by the good faith exception. The state concedes here that the police had no precedent to rely on in order to conduct the warrantless dog sniff of defendant's hotel room door. The state actually admits there's nothing stopping them. That's not reasonable reliance. And so the police also cannot reasonably rely on the warrant, given the legal landscape. Now, the Whitaker court, in its good faith analysis, stated, Cairo applies. The police should have known. Using a special tool, this is a search. But further, Jardines had been decided, which limits dog sniffs in relation to residences. And the Burns appellate court decision had already been decided at the time of this incident. That was decided January 2015. This incident occurred April 2015. Hasn't the Illinois Supreme Court said, and the U.S. Supreme Court, and Tobias have said that a sniff is not a search? In public places. Right? So that, of course, didn't apply in Jardines because it wasn't in public. Here, we have the sniff of defendant's hotel room door. And further, a hotel is, certainly a public can visit a hotel, but it's not the same as an airport. It's not the same as a traffic stop on the side of the road or at a traffic checkpoint. There is the right of the property management to exclude people. This little outquote, is there two hotel room doors? Yes. Would it be any different if there were one hotel room door inside that outquote? It would only be different if the police had not directed the dog to sniff the door. Because alerting to the odor of narcotics in a hall doesn't necessarily mean it's coming from that specific room. It could be from the outquote itself. Well, I assume you could look around the outquote and see if there were drugs in it. Assuming if the dog went down the hallway of the hotel and didn't alert and gets this outquote, where there's only one door leading out of it. It could also, and certainly this isn't argued in the briefs, but it could alert to narcotics having been there. They don't have to actually be there at that time. So absent more individualized probable cause. Well, I think the fact that when a dog sniffs a car, they've said, for example, it may be because narcotics have been there because somebody's been smoking dope for a week in their car and it's in the ceiling liner and all that kind of stuff. No court has ever said that because it could be that narcotics were there, and of course marijuana is not a narcotic, but the drugs were there, pampermint was there, and it's no longer there. That doesn't negate probable cause. Remember probable cause. You've just got to be reasonable, not correct, correct? Absolutely. But in this case, we do have two doors. And we also, beyond that, we have a targeted sniff. If there are no other questions, Your Honors, I can reserve questions for rebuttal. Mr. Nicolosi. Your Honors, may it please the Court, Counsel. Your Honors, Illinois doesn't have a case at this point on this particular topic, and so the people in our brief focused on the federal case of Roe v. which the trial judge in this case also relied upon in denying the defendant's motion to suppress, and people would submit the facts of Roe v. or as close as any case you could find to this case, and for that reason the reasoning of Roe v. should be adopted by this Court in affirming the trial judge's denial. The Court in Roe v. of course acknowledged that the defendant and anybody does have a reasonable expectation of privacy in a hotel room, but the hallway of a hotel is, the word they used was traversed by very many people, so the reasonable expectation of privacy that you have in your room doesn't extend to the hallway. Even the dissent, which obviously didn't agree with the holding in that case, acknowledged that the hallway is, quote, less private, end quote, than the room, but it's still not as public as the airport and other things that they say. The people would submit that there just quite simply isn't a reasonable expectation in the hallway, the common areas of a hotel. It is not a single family home. It is not even an apartment, even if Burns and Bonilla in those cases went on a privacy-based approach. It wouldn't apply here. It's just simply not a residence. Let me ask you, is it different if the dog's in the hall and bam, alerts, and there's a door here, as opposed to a dog putting his nose right up to the door or a key lock or a crevice or something where arguably the dog is not sniffing air in the hall anymore, when he inhales, he's sniffing the air inside that room? As you said, Your Honor, through your discussion with Ms. Rosario Moore, that a sniff is not a search, and the dog is in a place where the dog is entitled to be in this hallway where anybody can go, anybody can traverse, and so the dog was sniffing in an area where the dog was allowed to be. He wasn't in the room. The dog wasn't in the room. So I don't see a difference in that case, Your Honor, because again, if this was an apartment, of course, or a single family residence, the dog would not have been able to go up to the door, but this is a hallway, as cases have said for decades, that there is a reduced expectation of privacy in a hotel, and that clearly extends to the, basically means they're talking about the hallway. I think you have to draw the line somewhere, and I think drawing the line at the door makes perfect sense. You have a reasonable expectation of privacy on the room side of that door, but you don't on the hallway side of that door, and that's exactly the rationale that Roby used and that the trial judge in this case used to deny the motion to suppress. How do you divvy up the space in between? There's privacy on the inside of the door. There's no privacy on the outside of the door. What if the dog is sniffing right at the crack in the door? On the bottom? No, or on the side. The dog is still where the dog has the right to be? Any public person has the right to be. But where is the odor coming from? Well, in the room, but that's the public. What's the phrase? I used it in my brief. I didn't write it down, but like plain view and plain sniff. The dog is where the dog has the right to be, and the police officer has the right to be, and he smells the odor. Again, the line of demarcation is the door. If the smell is emitting outside of the door, the dog isn't in the room smelling, of course. The dog has to be outside. The dog was outside, smelled the odor, and I don't see an issue with it. Of course, the trial judge here didn't see an issue, and neither did the court and Roby. Again, that's the law that we have to work with. Sure, I understand. But, again, there's no case that goes against Roby that, again, this court hasn't faced with this issue before, and we have a case that's very reasonably decided. It's based on precedent in the way that hallways, common hallways of hotel rooms have been considered and reduced expectations, and the people would submit that that's sound reasoning that should be adopted by this court in affirming the judge's decision here. Just finally, briefly, if this court deems that the search wasn't proper, using the good faith principles, the people would submit that there was no illicit conduct here to deter. Again, if officers were to research the law, they would not have found anything that prohibited them from entering the common area of this hallway to do a search. If they would have researched, they would have found Roby, and that's the only case that we could find discussing reasonable expectation of privacy principles in common hallways. For that reason, the people would submit that if this court deems the search improper, the evidence recovered should be not excluded because it was recovered in good faith. That's all I have. Do you think it would have been permissible for the police to use another device if they wanted to hear something? I know it's Whitaker, Kyla, that uses a stethoscope at the door. Do you think that since they're outside, under your analogy, would that be okay? No, because I think it's been well established that the dog sniff is just searching for content. They're just sniffing for contraband and not innocent type of information. So I think that distinguishes the technology, Kyla or other cases of that nature. So as long as the enhanced equipment or the equipment that isn't readily available, as long as it's only detecting contraband, then you think that's the line? Absolutely. If there are any other questions, I'd be happy to answer them. Thank you. Thank you, Ms. Nicolosi. Ms. Rosario-Morini-Rabeau. Justice O'Brien, just to go on a little bit about your question of where the line would be drawn. Certainly the information doesn't have to be innocent to be protected. And that, of course, in Kylo and even in Jardines, you have narcotics. You have illicit conduct. But it's protected because it's inside the home. And so here it's the odor of narcotics, but it's part of the intimate activities of the room. The holdings in Cabayas that say the smell and the odor of narcotics are in public does not apply here. In other words, we're talking about protected activities inside the residence. And just to go to the state's citation of Roby, the trial court, in considering the motion, admitted that there was no law in Illinois pertaining specifically to hotels. But the trial judge didn't full stop reject the dissent in Roby. In fact, he said, I actually agree with some of the dissent, but I'm declining to make new law here. And he was discussing specifically a curtilage property rights approach, not the privacy rights approach that we're discussing here, and that's been established in Kylo. Of course, Roby was also dealing with the sniff of the halls. Here we're dealing with the targeted sniff of defendant's hotel room door. And the hallway is relevant in so far as it allows the government to snoop into the halls and into defendant's hotel room. That was the reasoning cited in Whitaker and also cited in Bonilla as an explanation as to why the curtilage was protected. Because the bottom line here is that if you're in a hotel, you don't expect the police to walk drug-sniffing dogs up and down the halls. There is an expectation. I don't know whether you would expect that or not. If it's a public, it doesn't matter what the defendant subjectively expects. But it's a, people can bring dogs up and down there and stuff. We've got a case that describes the outside of a hotel room as curtilage. Well, we're talking about the Kylo privacy rights analysis. In Katz, of course, the court held that the Fourth Amendment protects people, not places, right? And it's established that a hotel room is the same as a home. It's the same as an apartment. It doesn't matter whether the defendant lived there long-term. Certainly, not everyone has stable housing. Not everyone can be in a single-family home or even in a long-term apartment. So it doesn't matter how long the defendant was staying there. He had a reasonable expectation of privacy in his home. And under a privacy rights analysis, it does matter whether or not people reasonably expect police to be snooping the halls with drug-sniffing dogs. If we could, let's discuss the good faith exception. Because I would suggest that maybe the courts expanded the exclusionary rule beyond maybe where it ought to be, but I'll give you an opportunity to disagree. The idea of the exclusionary rule was to deter police, you know, conduct by the police that would outrage the community. And it was a tradeoff because, well, we don't want to throw cops in jail or sue them because that would be a bad thing. So the police want convictions, so we'll trade it off and throw out this evidence. What about this conduct by the police ought to outrage the community? I think there is conduct that would outrage the community. Certainly here, as the court reasoned in Whitaker, Kylo had been decided for a long time. The police should know that when they're using a special tool that's not available to the general public and they're going to a person's residence, that's a search. Further, as the state admits, there's nothing stopping the police. That's not reasonable reliance. And in this case, as we argued, people do not expect drug-sniffing dogs to go up and down the halls of hotels. This is a residence for some people. And it's also an arbitrary line that has an impact based on race, ethnicity, and income. That's also in Whitaker, and that's cited in Bonilla. That is conduct to deter, to say, if you can't afford a single-family home or an apartment, then you are going to have to submit to less privacy in your residence. On a traffic stop, can a police officer tell a defendant, you know, get out of the car? Is it okay, is the Constitution protected for a police officer to ask a defendant, get out of the car? I'm sending my dog into the car. Well, there's a couple things to say. I would say I hesitate to answer that question without knowing the other circumstances of the stop. But a car is distinctly different from a hotel room, and there's a reasonable expectation of privacy in this hotel room that doesn't exist in the car. Let me correct you. Would you agree with me that a police officer cannot, for a warrantless search, you can't say, I want the dog inside the car, because that can't do that, right? The dog's got to be outside the car. Certainly. And if you see any case that says how close that dog can get to the car, when sniffing, for a warrantless search of the car, or actually a warrantless sniff, and they said it's not a search. I'm not aware of any case, but I do think there is a difference between the car and the hotel room. Just because we're dealing with the dog sniff doesn't mean that the analysis would be the same. The hotel room is more akin and certainly is the same, is treated the same under the Fourth Amendment. And Mr. D'Ambrosio made the point of, was the dog in a place they had a right to take the dog? And is that what this boils down to, taking the police? I would say the dog was not in a place when the dog sniffed up against the seams in the handle. And it's very much akin to putting a stethoscope up to the door to listen to what's going on inside. That's impermissible under cats. Government can't do that. It's the same kind of search when they bring the dog up to the door to sniff the odor inside the room, in order to narrow it down to say, this is where the odor is coming from. If there are no further questions, defendant asks that this court reverse his conviction outright. Thank you so much. Thank you. Thank you both for your attendance here today. This man will be taken under advisement, written disposition. This disposition will be forthcoming. And right now we'll be in a brief recess for a panel discussion. Ladies and gentlemen, please rise. Court is now in recess.